Our next case is number 16, 1372 Securus Technologies, Inc. v. Global Tel Link Corporation, and his is number 16, 1372 Securus Technologies, Inc. v. Global Tel Link Corporation. Good morning. May it please the Court. The Board's final written decision here rests on a prior art combination that was created for the petitions. The petitions here do not suffer the common problem that patent owners face in inter-parties review, where the petitioner does not describe its grounds for unpatentability with enough specificity as required by Section 312 of the IPR statute. Instead, the problem here is that the petition's grounds rest on a prior art combination that does not work. And in the face of that problem, the Board did two things wrong. When Securus pointed out the functionality that was missing from the prior art combination, the Board first erroneously shifted the burden onto the patent owner, expecting the patent owner to prove why that missing functionality would not have been inherent. And based on that shifting of the burden, the second thing the Board got wrong was that they then let the petitioner off the hook and did not require the petitioner to make its case of obviousness, which would need to have an operable working prior art combination. These errors by the Board are very similar to those that the Court found reversible errors in the recent Magnum Oil case, where the Court focused on two errors by the Board. The first shifting the burden of proof in an obviousness case to the patent owner, which is impermissible under the IPR statute. And second, letting the petitioner get away without proving its full case, not meeting its burden, which is under 316, to show a proposition of unpatentability by a patent owner. Wasn't the patent owner requested to show patentability, but only after there had been a determination with the petitioner's evidence of unpatentability? That would imply that there should be some shifting of a burden onto the patent owner. Maybe it's just providing the opportunity to give a response. I'm not sure that there's a new shifting of a burden that has occurred. I think Magnum Oil is very instructive on this case, because that same question was posed there. Is the Board allowed to respond to rebuttal by the patent owner without shifting the burden? The Court said the focus is not on whether the patent owner is putting in a rebuttal argument or not. The focus is on where the burden of proof of both persuasion and production rests. Suppose the Board here had simply said, we don't find the patent owner's response to this to be adequate. If they had said... So the Board recognized the argument by the patent owner that the functionality is missing from... We don't find this convincing. We don't find this response to be adequate. I don't think that they would have evidence to support an obvious misconclusion then, because there is no evidence. That's the real question here, isn't it? I mean, they may have used language which is imprecise, but that's essentially what they were saying, is that the patent owner hasn't adequately responded. But what they said was not just that the patent owner hasn't responded. They said the patent owner has not shown that that functionality would not be inherent. And that is not the patent owner's job. If inherency were argued by the petitioner, which it was not, if the petitioner wanted to argue inherency, that would be part of its obviousness case. But that's not what happened here. I don't think this was a case of imprecise language by the Board. There are two instances where the Board specifically said the patent owner hasn't shown, hasn't persuaded us that that missing functionality wouldn't be inherent. You focus on the word shown, both in your brief and here today, but is that really adequate? Any time that the word shown is used by the Board, are we talking about some sort of burden shifting that happens? No, I don't think it's... It seems to me that this is a word that they use. Right. I don't think the word shown is the problem. I think the problem in the statements, the two statements from the Board, in that one it is inherent, that they are, the Board is either, perhaps they're suggesting the missing functionality would have been inherent, which is not something the Board can do on its own. But they're saying that the patent owner would have to show that it's not inherent. And that's wrong. That if inherency is needed to show obviousness, it's part of the gram factor analysis of obviousness. And that goes to the petitioner's burden. So I wouldn't focus on the word shown in that passage. I would focus on the word inherent. And in the other passage that we discussed in our briefs, where the Board shifted the burden, and what they said there, the part of that I would focus on, is they said that the patent owner has not shown that the combination would have been beyond the level of skill in the art, or would have produced a result that was not predictable. Those are part, those things, the beyond the level of skill and the unpredictable result, those things go to the gram analysis. And magnum oil, actually the magnum oil court used as an example from the Board there, that is almost identical to that passage in this Board decision, where the Board in magnum oil said that the patent owner had not shown that it would have been beyond the level of skill, or that it would have yielded an unpredictable result. That's exactly what the Board did here. And those are the pieces that the Board was not just saying, it's not about just the words. And in magnum oil the court says, the language is not what's of concern. What's of concern is where the Board is placing the ultimate burden. So turning to the substantial evidence question, why isn't the Board's decision here supported by substantial evidence? It stems from that problem in the petitioner's combination. If you look at the record, the patent owner put in evidence and arguments to show that the combination that the petitioner had made, combining pieces of Figure 3 with pieces of Figure 5, had to have functionality that it did not have. And the patent owner put that evidence. What functionality? If I could turn you to the figures, I think that might be most helpful. The petitioner created Figure A for the expert's declaration, and the petition included a Figure A, which combines pieces of Figures 3 and 5 from the prior art. Isn't this exactly what a plecito would do? I mean, this seems to me to put out in objective form what a plecito would be thinking. If I was to put this combination in terms of a figure, then Figure A would be it. Okay. So the problem with Figure A is that it takes the pieces of the two figures. And so if you look at the element that I focus on that's focused on the brief is Server 48, which is kind of in the center of Figure A. Server 48 comes from Figure 3, which is in the reference. And in Figure 3, Server 48 is connected to a central office, a phone company on one side, and what's something called an administration manager, a computer on the other side, and multiple prisons. No one is disputing that the server in Figure 3 connects calls to and from multiple prisons. That's because it has no router, you're saying. Well, the reference doesn't say server does anything. There's one sentence in the reference, and it says that the server connects calls from multiple prisons to the central office, to the phone company. So that's all that there is in the patent about that server. I understood your argument to be that this would be inoperable because 48 does not have a router. Well, so what would make it inoperable in Figure A? The routing that's shown in Figure 3, that's on the right-hand side. That is between the server and the multiple prison sites. That's on the right-hand side of Figure A. So it is a router. Well, that transmission, it may have routing capabilities. They didn't put any evidence in that it does. And that's the piece that's missing. Isn't it trivial for a procedure to say, well, this has no router, I'll put a router in it. Well, it's not just a router. It's actually the functionality to connect calls to multiple prisons, to and from multiple prisons. That, we agree, is in Figure 3, and it's on the right-hand side of Figure A. But the problem is that the patent owner pointed out on the left-hand side of Figure A, by combining these two figures, the figure on the left-hand side of the server has to divide data in one path to some components and voice over IP packets on a different path. That's the left-hand side of the server. That's something that wasn't with that server in Figure 3, not described in the patent. Go back to my initial question. Your argument is that what's shown in Figure A does not work, would not work. Because of the routing on the left-hand side, the decision process. Right, it would not work. That's your argument. That's right. It's inoperable. Yes. Does our case law support that argument, that you have to show that this would be operable? Yes. As part of the partitioner's case of showing obviousness, the combination has to work. And if you look at the inoperability cases, that is a problem. A non-working system or combination is a problem in a couple different ways. You can look at it either as something that undermines... It's not a question of it being inoperable. It's a question of you're saying that there's a functionality that's required by the claims that's not shown in the prior art. I think that is what inoperable means. There's a functionality that's needed but not there. Inoperability usually means that it would conflict one with the other if you tried to do it. But never mind. Here the argument is that there's functionality that's needed. That routing between voice and data that's shown in Figure A that is not there and is not shown in the prior art. And the partitioner did not put in any evidence to show how that server would accomplish that routing. That's the way we are... And so what the board said, it was well known that servers have routing capability and that it would be obvious to do that. The petitioner didn't say that and the board didn't say that. What the board did instead... And the patent owner made this argument in its patent owner response. The petitioner had a reply and was able to come back with new evidence. They did not give any new evidence. They did not give any citations to the record. And they did not even argue that that routing capability that you're talking about would have been obvious or inherent. The petitioner... I'm sorry. Go ahead. Under KSR, can't the board say this would be practical for a POSITA to place a router? In an IPR, though, the petitioner is the one that bears the burden of proof. It's not an examination. And the board is not free to make new arguments for the petitioner that were not made in the petition. But routers are well known, right? The petitioner, in response to the patent owner pointing out this lacking of functionality, they did not come back with anything to show, not just that there's routing, but that there would be some decision made by the server between those two paths. There is no evidence on that. You don't think that, for example, Dr. Forres' statement at Appendix 4361, that a person of ordinary skill in the art at the time of the invention would understand from the teaching of Spadaro how Server 48 could be implemented to route VOIP data packets in a multi-site prison environment. That seems to me to address the point you're making. So that is all about the routing between the server and the prisons, which in Figure A is on the right-hand side. And we don't dispute that the server can connect calls between the server and multiple prison sites. And be routing VOIP data and calls in the collecting process? And if you look at Figure A, that says voice over IP and data are all connected. But what it doesn't explain, and Dr. Forres does not explain, how the server would decide which way data goes and which way the voice over IP goes. Even though we know that the router is capable, or the server with routing capacity is capable, of handling VOIP voice and data. And the only question is, can it go both ways or just one way? Well, because in the reference, that server, which is where the petitioner took it from, has only a single input and output. It doesn't describe what the server does at all. And actually in Figure 3, there's a separate router that does the routing in that sentence in the patent. But the functionality between the server and the router, it doesn't matter whether they are depicted as two boxes or one, right? So what it comes back to, though, is a problem in the evidence. That here is the petitioner's burden. Both the burden of persuasion and the burden of production. Stay with the petitioner. And when the petitioner was given a chance to make the arguments or points that you're making, or suggesting the board could have made, the petitioner didn't. They pointed to the same arguments about the server being able to route calls to and from the multiple prisons. But they did not respond substantively with new arguments or evidence. And they did not argue that it would have been inherent or obvious for that server to choose where to send data versus where to send voice over IP. I think I'm into my rebuttal time quite a bit. Happy to answer more questions if you have them. I think we'll wait until the rebuttal. Mr. Picard. Good morning, and may it please the Court. Byron Picard on behalf of Global Telink. I'd like to start by addressing the burden shifting question. If we look at the board's final written decisions, in both instances, this is in the 167 patent joint appendix 32, they start off saying we determined that the petitioner has demonstrated by a preponderance of evidence that Spadaro would have conveyed to one of ordinary skill in the art, the recited networking device. So from the outset, the board is announcing that it understands the burdens and the law, and then it turns to the claims, and it recognizes that the networking device, and that's the claim element that's in dispute on this burden shifting issue. It only does two things. It collects outgoing voice over IP packets, and it distributes incoming voice over IP packets, and then it steps through the various teachings of Spadaro and finds that the proposed combination that petitioner presented to the board taught both of those functions.  What it does in the sentence that the appellant first points to, where it points out that the patent owner has not presented evidence that this was beyond this level of skill in the art, or would have yielded unpredictable arts, is simply saying, Securus didn't address the teachings of the art, and they didn't address these other elements. They've instead brought out a series of challenges that really didn't get to the two functions that the networking device must do. Then it turned to those rebuttal arguments, and weighed the evidence, and found that on the whole, by preponderance of the evidence, Global Tel-Link had proven unpatentability. That then brings us to the so-called inoperability question. My colleague has suggested to this panel that that's what they argued below. If you look at the record below, they did not argue inoperability. It's not dispositive, but they don't use that language in any of their evidence or in their arguments to the board. I think it's telling that both Global Tel-Link and the board, when they responded to those arguments, didn't understand them to be one of inoperability. Instead, what the appellant did below was to say, if we take this particular combination of Spadaro's teachings, then it would have required some special functionality for Server 48. Petitioner hasn't shown why that special functionality would have been present. That special functionality is intelligent routing. I think it's important to not lose sight of the fact that this intelligent routing functionality does not appear in the claims. It's not in the claims. There's only two functions that this networking device must perform, and that is to receive and distribute incoming and outgoing voiceover IP packets. The intelligent routing function is a completely different function that's not in the claims. Appellants overlooked the fact that we did put in evidence on this question. I'm confused. When you use the term intelligent routing, what do you mean other than being able to distribute the voiceover internet protocol data and voice packets as directed? I think it's a good question because there's some confusion, even in my own reading of the papers below and in the briefing. Intelligent routing terminology is introduced by patent owners, not in the claims. All the claims require is collecting the outgoing packets and passing them on to the PSTN and distributing the incoming packets to the multiple prisons. DARA teaches both of those. There's no dispute on that. I think what patent owners are saying is, no, no, there must be this additional functionality that there's going to be separate non-voiceover IP data packets, and Server 48 must know how to handle those with respect to the pin checking and the billing records and so on. But if you look at the claims... You're saying that the billing and the VOIP have to be centralized together in a single system, right? I'm sorry, I missed the first part. They're saying that the VOIP and the billing and other things have to be centralized in a single system as your Exhibit A showed. What they're saying is that the functionality of Router 48 hasn't been shown to be able to connect to the left side, that is, the billing, etc. I think that's one way to understand their argument. I've struggled with it, frankly. I think it's important to step back. There's no requirement in the claims or any description in the two patents on appeal about how these separate data packets, the non-voiceover data packets, if that's how the system would work, what particular component would have to handle the queries to the pin checking and the billing function and so forth. They would simply assume that that would have to be done in Server 48. I think if you look at... But they're going to be centralized. They have to be connected in some way. Yes, but there's many components that are centralized. You've got a call application management system in addition to the Server 48. I think the easier answer to this question is that there is substantial evidence in the record that Server 48 had that functionality. Dr. Forres put that in in reply. If you look at Joint Appendix 120, the final written decision for the 003 patent, the board credited that evidence. What's the best source of Dr. Forres's... Dr. Forres makes a number of statements, and some of them are duplicative. But what is the best evidence on that point, do you think, from Dr. Forres? Is it the section that I was looking at for Appendix 4361, or is there something else that's better? It is at 4361 where he explains how the skilled artisan would have understood that Server 48, there's no dispute that it has routing functionality, and the skilled artisan would have understood and could have handled the so-called intelligent routing. I think lost in the mix is that, and maybe there was some of this in my colleague's presentation, the question isn't whether Server 48 would have been inoperable for just any function. It would have to be inoperable for a function that was required by the claims. I just want to go back. This intelligent routing functionality is not in the claims anywhere. We've got very broad claims. Server 48 has only two very narrow functions, and it must be co-located or connected via LAN to a number of other... Well, unfortunately for you, the board doesn't say that intelligent routing is not a claim limitation. They say it's shown by the combination in 38 and 39. And where are you reading from there? Appendix 38 and 39. Be that as it may, even if the board said that, I believe what the board said there was that this routing functionality was shown in the combination, this court is free to look at the claims and determine for itself whether that is a required function of the claims. And you still don't see that. Well, it comes back to the question that I still am not clear on is exactly what either of you means by intelligent routing that's different from simply performing the two-way routing of calls. What's the intelligent component that we're arguing about here? I'm lost on that. Your Honor, so the intelligent routing terminology is something that was introduced into the case by the patent owner. Spadaro has teachings which the board steps through. You're connecting the left side of Exhibit A to the right side, right? I believe, in simple terms, I believe that's what they're saying. But to Judge Bryson's question, the claims require just the two-way distribution of voice-over IP packets. Right. And the record has substantial evidence on that point. Are we saying, is your understanding that when the board uses the expression intelligent routing, what it means is two-way routing of calls? I think if you look at the... VOIP data and calls. Is that it? I think that's right. I think that's what the board, as I read the opinion, that's what the board, I understand, was being argued. Does it have both ways of functionality? We see a more detailed explication of that argument in the briefing here. If you look at the record below, there's just one paragraph that was presented to the board on this issue. And that's at... Bear with me here for a second. Joint Appendix 457, you'll see there three conclusory sentences that were presented to the board that use this intelligent routing language. The board did find that Spadaro's proposed combination in figure A had the ability to do the two-way voice-over IP collection distribution. And there's no dispute in this record that that is the case. Thank you. We've already got about a minute and a half here. I think the clearest explanation in the record before the board of what intelligent routing is, what Sakaris' argument was, is the paragraph in the Patent Owner Response, but also the two... What page? So I guess it's Appendix 457. 457? Yes. There's a paragraph there where the Patent Owner argued that intelligent routing would be needed in the combination, speaking specifically about the combination that's presented by the petitioner. That cites to Dr. Olivier, who is the Patent Owner's expert, and I'll point you to his clearest explanation of what intelligent routing is on Appendix 4698 into 99. It's paragraph 223 of the Olivier Declaration. And he explains the problem with if server 48 were placed where Dr. Forrest placed it in that figure A, that it would need to perform intelligent routing. Could I get that page again? Yes, of course. 4698, okay, thanks. Into 99. And he goes on to say that the device must collect outgoing Voice over IP data packets and distribute incoming Voice over IP data packets to the connected system components within the centralized call processing platform. That piece where he is talking about the components within the centralized call processing platform, that's the left-hand side of figure A. That is the intelligent routing that is missing. And in response, the Patent Owner came back with the same citations and the board where accredited that evidence was accrediting evidence from the Petitioner about the connecting of calls from the server to the prisons. The expert goes on on 4699 to explain that Dr. Forrest provides no explanation for how the server does this, and there is minimal description of server 48 in the patent. Just one sentence that says a router sends calls to the server, which connects them to the central office. Okay, thank you, Ms. Underwood. Thank you. Thank you both, counsel. Case is submitted.